# 25-490

## United States Court of Appeals
## for the Second Circuit

LETICIA FRANCINE STIDHUM,

*Plaintiff-Appellant,*

v.

161-10 HILLSIDE AUTO AVE, LLC d/b/a Hillside Auto Outlet,
HILLSIDE AUTO MALL INC d/b/a Hillside Auto Mall,
ISHAQUE THANWALLA, JORY BARON, and ANDRIS GUZMAN
*Defendants-Appellees.*

RONALD M. BARON

*Defendant.*

On Appeal from the United States District Court
for the Eastern District of New York

## BRIEF FOR PLAINTIFF-APPELLANT

John Troy
Aaron Schweitzer
Tiffany Troy
Troy Law, PLLC
*Counsel for Plaintiff-Appellant*

41-25 Kissena Boulevard, Suite 110
Flushing, NY 11355
(718) 762-1324

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUES ........................................................................ 2

STATEMENT OF THE CASE .................................................................... 3

    Nature of the Action ............................................................................ 3

    Result Below .......................................................................................... 3

STANDARD OF REVIEW ........................................................................ 4

ARGUMENT .............................................................................................. 6

I.    There is a Genuine Dispute of Material Fact as to Whether Plaintiff-Appellant Suffered an Adverse Employment Action that Gives Rise to an Inference of Discriminatory Intent ................................................................ 6

II.    The Lower Court Failed to Account for the Defendants' Spoilation/ Loss of the Relevant Sales Log in its Decision ................................................ 15

III.    The Lower Count Erred in Tethering the Start Date of the Calculation of Wage Loss Associated with the Longer Wait Time to Pregnancy Announcement Rather Than when the Longer Wait Time was Implemented .............................. 19

i

IV.     There is a Genuine Dispute of Material Fact as to Whether there was

Constructive Discharge............................................................23

V.      There is a Genuine Dispute of Material Fact as to Whether there was

Failure to Promote ................................................................27

CONCLUSION ........................................................................30

Certificate of Filing and Service ....................................................31

Certificate of Compliance ..........................................................32

# TABLE OF AUTHORITIES

## Cases

*Back v. Bank Hapoalim, B.M.*, No. 24-1064-cv, 2024 U.S. App. LEXIS 28598, at
   *1 (2d Cir. 2024) ...................................................................................7

*Batchelor v. City of New York*,12 F.Supp. 3d 458 (E.D.N.Y. 2014) .......................12

*Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 U.S. Dist.
   LEXIS 198655, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020) .................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................4

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media*, 140 S. Ct. 1009, 1019,
   206 L. Ed. 2d 356 (2020)....................................................................13

*Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 U.S. Dist. LEXIS 235002,
   2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020)........................................13

*DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30 (2d Cir. 1993).......4

*Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988) ............................5

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243 (2d Cir. 1985), *cert.
   denied*, 484 U.S. 918 (1987)...................................................................4

*Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325-26 (S.D.N.Y.
   2020)...............................................................................................13

*Fogarty v. Near N. Ins. Brokerage Co., Inc.,* 1997 U.S. Dist. LEXIS 20677, 1997
   WL 799112, at *1 (S.D.N.Y. Dec. 30, 1997)......................................................23

*Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219 (2d Cir. 1994). 4, 5

*Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975) ................. 4

*Hitchcock v. Angel Corps, Inc*., 718 F.3d 733 (7th Cir. 2013) ............................... 29

*Hu v. City of N.Y.*, 927 F.3d 81, 96-97 (2d Cir. 2019)...................................... 9

*Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018)............................. 9

*Kirkland-Hudson v Mount Vernon City Sch Dist*, No 21-CV-695 (KMK), 2023 US

    Dist LEXIS 54339 (SDNY Mar 29, 2023).......................................... 13

*Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149 (2d Cir. 1998)....................................... 23

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)............................... 13

*Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019)...................................... 13

*Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ................................. 9

*Martin v. Canon Bus. Solutions, Inc*., No. 11-cv-02565- WJM-KMT, 2013 WL

    11132134 (D. Colo. Sept. 9, 2013)........................................................ 29

*McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ................................... 9

*Meiri v. Dacon*, 759 F.2d 989 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985) .... 5

*Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100 (2d Cir. 1989) ................. 5

*Morris v. New York City Dep't of Sanitation*, 2003 U.S. Dist. LEXIS 5146, 2003

    WL 1739009, at *1 (S.D.N.Y. Apr. 2, 2003) ...................................... 23

*Muldrow v. City of St. Louis,* 601 U.S. 346 (2024) ............................................. 7, 8

*Murray v. Town of N. Hempstead*, 853 F.Supp. 2d 247 (E.D.N.Y. 2012) .............. 11

*Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV 13-5475 (JS) (AKT), 2015 U.S. Dist. LEXIS 113071, at *1 (E.D.N.Y. Aug. 25, 2015) ................................................................................ 17, 18

*Patrick v. LeFevre*, 745 F.2d 153 (2d Cir. 1984) ........................................5

*Paul v. Lenox Hill Hosp,* 13-CV-01566(CBA) (LB), 2016 WL 4775532, at *1 (E.D.N.Y. Jan. 15, 2016), *report and recommendation adopted,* 13-CV-1566 (CBA)(LB), 2016 WL 1271034 (E.D.N.Y. Mar. 29, 2016) ................................11

*Pena v. Brattleboro Retreat*, 702 F.2d 322 (2d Cir. 1983) ......................23

*Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004) .................................28

*Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99 (2d Cir. 2002) ..15

*Ruiz v. Cty. of Rockland*, 609 F.3d 486 (2d Cir. 2010) ..............................9

*Sanders v. N.Y.C. Human Res. Admin.*, 361F. 3d 749 (2d Cir. 2004) .....................19

*Sutter v. Dibello*, No. 18-CV-817, 2021 U.S. Dist. LEXIS 46312, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) ..............................................9

*Szwalla v. Time Warner Cable, LLC,* 135 F.Supp. 3d 34 (N.D.N.Y. 2015) ...........20

*Trinidad v. New York City Dep't of Correction*, 423 F. Supp. 2d 151 (S.D.N.Y. 2006) .............................................................................26

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) .................................................................13

*Williams v. Bristol-Myers Squibb Co*., 85 F.3d 270 (7th Cir. 1996)),aff'd, 670 F.

  App'x 738 (2d Cir. 2016) ........................................................................20

*Young v. UPS*, 575 U.S. 206 (2015) ........................................................6

*Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212 (S.D.N.Y. 2003) ........................15

**Statutes**

§1981 ..............................................................................................13

28 U.S.C. § 1291 ................................................................................1

42 U.S.C. 2000e *et seq.* ......................................................................3

NY Exec. § 290 *et seq.* ......................................................................3

NYC Admin. § 8-107(22), *et seq*..........................................................3

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. By order dated January 30, 2025, the Court granted Defendants-Appellees's Motion Summary Judgment in part against Plaintiffs-Appellants. (SA-025).

## STATEMENT OF ISSUES

1. Whether the District Court erred in finding that Plaintiff-Appellant failed to establish sufficient facts to make out the third and fourth prong, namely that Plaintiff suffered an adverse action that gives rise to an inference of discriminatory intent of a *prima facie* case of discrimination under *McDonnell Douglas*.

2. Whether the District Court erred in failing to account for Defendants' loss of weekly commission sales sheet identifying Plaintiff-Appellant and her comparators in car sales between November 2018 and January 2019 in determining whether there were lost sales based on Defendants' calculations of the wage differential.

3. Whether the District Court erred in crediting Defendants' calculation of the wage differential and in finding that Plaintiff-Appellant's income fluctuation "is marginal and untethered to the announcement" of her pregnancy.

4. Whether the District Court erred in finding that the Plaintiff-Appellant has not pointed to enough evidence to support a claim for adverse employment based on constructive discharge.

5. Whether the District Court erred in finding that the Plaintiff-Appellant has not pointed to enough evidence to support a claim for adverse employment based on failure to promote.

## STATEMENT OF THE CASE

**Nature of the Action**

Plaintiff-Appellant challenged Defendants-Appellees' employment practices in violation of the, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. 2000e *et seq.*; New York State Human Rights Law ("NYSHRL"), NY Exec. § 290 *et seq.*; and New York City Human Rights Law ("NYCHRL") NYC Admin. § 8-107(22), *et seq.* ("NYC Pregnancy Worker Fairness Act"). District Judge Orellia E. Merchant issued a Memorandum and Order dismissing Plaintiff-Appellant's "federal law and NYSHRL sex discrimination claims" with prejudice. In the same order, Judge Merchant additionally dismissed Plaintiff-Appellant's "NYSHRL disability discrimination claim and NYCHRL sex discrimination claim" without prejudice" "to refiling in state court." SA26.

**Result Below**

The District Court entered a final judgment on its merits in favor of Defendants-Appellees and against Plaintiff-Appellant. SA27-SA28. The District Court erroneously found that Plaintiff-Appellant failed to establish the third and fourth prongs of a *prima facie* case of discrimination, namely that Plaintiff-Appellant suffered an adverse employment action that gives rise to an inference of discriminatory intent under Title VII and NYSHRL pregnancy claim.

## STANDARD OF REVIEW

In reviewing a grant of summary judgment, the Second Circuit applies the same summary judgment standard and "determine *de novo* whether or not a genuine issue of material fact exists that would preclude judgment as a matter of law." *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The Court in *Gallo* outlined the following rules:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. *See Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied*, 484 U.S. 918 (1987). Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993).When no rational jury could find in favor of the nonmoving party because

the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *See Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988). Fifth, when deciding whether this drastic provisional remedy should be granted in a discrimination case, additional considerations should be taken into account. A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. *See Montana v. First Fed. Sav. & Loan Ass'n*, 869 F.2d 100, 103 (2d Cir. 1989); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985); *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Finally, the trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. *Gallo*, 22 F.3d at 1223-24.

## ARGUMENT

I. **There is a Genuine Dispute of Material Fact as to Whether Plaintiff-Appellant Suffered an Adverse Employment Action that Gives Rise to an Inference of Discriminatory Intent**

An individual pregnant worker who seeks to show disparate treatment through indirect evidence may do so through application of the McDonnell Douglas framework. That framework requires a plaintiff to make out a prima facie case of discrimination. But it is not intended to be an inflexible rule. Rather, an individual plaintiff may establish a prima facie case by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII of the Civil Rights Act of 1964. The burden of making this showing is not onerous. In particular, making this showing is not as burdensome as succeeding on an ultimate finding of fact as to a discriminatory employment action. Neither does it require the plaintiff to show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways. *Young v. UPS*, 575 U.S. 206, 206 (2015).

The District Court has erred in finding that Plaintiff-Appellant has failed to establish sufficient facts to establish that Plaintiff-Appellant suffered an adverse

6

employment action and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See* SA16.

In its decision, the District Court applied the new standard promulgated by *Muldrow v. City of St. Louis,* 601 U.S. 346 (April 17, 2024), which was decided subsequent to the filing of the fully-briefed motion of summary judgment. *Muldrow v. City of St. Louis,* 601 U.S. 346 (2024); *see also* SA16-17. *Muldow* "overruled [Second Circuit] precedent" requiring the Plaintiff to show a "*materially adverse* change in the terms and conditions of employment" and held that to allege an adverse employment action—such as an adverse transfer—the plaintiff "does not have to show . . . that the harm incurred was significant[] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow,* 601 U.S. at 355. Instead, the text of Title VII requires only that a transferee show "*some* harm respecting an identifiable term or condition of employment." *Id.* (emphasis added). In other words, "[t]he transfer must have left her worse off, but need not have left her significantly so." *Back v. Bank Hapoalim, B.M.*, No. 24-1064-cv, 2024 U.S. App. LEXIS 28598, at *4-5 (2d Cir. 2024).

The District Court erred in finding that the increased wait time and the corresponding decrease in pay does not constitute "*some* harm," which Justice Thomas defined in his concurrence as "more than trifling." *See* SA19; *see also*

7

*Muldrow*, 601 U.S. at 360. The Court has erred both because the wait time cases it cited the "*material* change" standard pre-*Muldrow* rather than "*some* change" standard post-*Muldrow* and because Plaintiff lost customers due to the increased wait time from walk outs, translating to lower commissions and lower wages. *See* SA18.

Here, the District Court improperly *assumed* that "the increase" in "Plaintiff's wait time" "likely only mirrors other employees without DealTrack access already experienced. Longer wait times, while inconvenient and annoying, are not so harmful or injurious that they constitute 'some harm' related to Plaintiff-Appellant's employment." *See* SA19. However, this presumption is contraindicated by deposition testimony of the Plaintiff-Appellant that "[o]f the two to three people who Plaintiff-Appellant was seeing daily, on average two customers walked out (roughly 2/3 of the customers) walked out due to the longer wait time caused by Guzman's targeted and intentional delay in running and reading the credit applications." *See* A182. Thus, the increased in wait time was so *different* from that of the other car salesman such that customers' work out dramatically shot up.

The targeting of Plaintiff-Appellant within one month's time after her pregnancy announcement in late November 2018, starting in 2019—while leaving

other car salesmen alone—is a showing of disparate treatment, a recognized method of raising an inference of discrimination for the purpose of making out a prima facie case. *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted)). "[A] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside [her] protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'" *Sutter v. Dibello*, No. 18-CV-817, 2021 U.S. Dist. LEXIS 46312, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (quoting *Hu v. City of N.Y.*, 927 F.3d 81, 96-97 (2d Cir. 2019)). The alleged comparator must be similar enough "to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *see also Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) (summary order); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 U.S. Dist. LEXIS 198655, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020). (*Kirkland-Hudson v Mount Vernon City Sch Dist*, No 21-CV-695 (KMK), 2023 US Dist LEXIS 54339 (SDNY Mar 29, 2023)).

While Defendants claim that "Guzman took the same time to process credit applications for all salespeople so Plaintiff was treated no differently," the truth of

the matter is that shortly after Plaintiff-Appellant's pregnancy announcement, after Thanwalla left for vacation, Guzman deliberately increased the wait time. *See* A189. In fact, other car salesmen observed and commented upon the drastic decrease in numbers after Plaintiff-Appellant's pregnancy announcement, which made other salespeople that didn't sell that many cars look successful. *See* A1905; *see also* A215 (Other Co-Workers Witnessing Discrepancy in cars for Plaintiff-Appellant) and A218 (Co-Worker Explaining Discrepancy in cars).

In contrast, Plaintiff-Appellant can show that delays in *putting in* credit applications was drawn solely from Guzman's treatment of Plaintiff-Appellant after the pregnancy announcement. During Plaintiff-Appellant's deposition, there was a lengthy discussion regarding Plaintiff-Appellant's pay before and after her pregnancy announcement, which demonstrated that Plaintiff-Appellant was selling far fewer cars at the end of her employment (close in time to her pregnancy announcement) than during the middle period of employment. *See* A236; A247. Indeed, Ms. Stidhum experienced a statistically-significant decrease in the number of car sales made in credit card applications immediately after she announced her pregnancy: Plaintiff-Appellant was the top saleswoman and made the most sales in the store in November 2018 directly preceding the pregnancy announcement but became the bottom salesperson in the store in late December 2018 after Guzman took away the credit card application and purposefully delayed the application. *See*

A167, A173-A174, A182. Plaintiff-Appellant was also the only female salesperson for the first four months of her employment and one of two female salespersons during the remainder of her employment at Hillside Auto. *See* A168. Defendants attempt to show that the cause of the delay and targeting of Ms. Stidhum is due to personal animus, as there were two (2) prior interpersonal conflicts with Guzman. However, nothing became of these isolated arguments and Plaintiff-Appellant and Guzman maintained a professional relationship. *See* A211. Similarly, the lack of verbal comments about her pregnancy is belied by the actions taken by Guzman in sabotaging Plaintiff-Appellant's employment at Hillside Auto Outlet.

The three cases cited by the District Court applied the more stringent precedent pre-*Muldow* and so are in apposite, as Plaintiff-Appellant post *Muldrow* merely needs to allege "*some"* harm that is "more than trifling": (1) *Paul v. Lenox Hill Hosp,* 13-CV-01566(CBA) (LB), 2016 WL 4775532, at *11 (E.D.N.Y. Jan. 15, 2016), *report and recommendation adopted,* 13-CV-1566 (CBA)(LB), 2016 WL 1271034 (E.D.N.Y. Mar. 29, 2016) (finding there was no adverse employment action where the employer did not assign Plaintiff a computer and thus she "was required to record patient notes on computers in the main office when her assigned floor did not have terminals available."); (2) *Murray v. Town of N. Hempstead*, 853 F.Supp. 2d 247, 266 (E.D.N.Y. 2012) (finding that a transfer to a workstation away from filing cabinets made plaintiff's job logistically more difficult but did not rise

11

to the level of being *materially* adverse); (3) *Batchelor v. City of New York*,12

F.Supp. 3d 458, 473-74 (E.D.N.Y. 2014) (finding a four-week wait for a locker

where there were no lockers available did not constitute an adverse action but a

mere inconvenience). The Court improperly discredited the disparate treatment of

Plaintiff-Appellant and the targeting of her specifically in finding that "waiting for

a customer's credit application to be processed is like waiting for a locker, or

having to move to another floor to enter patient information in a work computer, in

that it is not more than trifling" when the wait time increase was so severe that it

impacted her pay.

Up and through November 2018, shortly after the time of Plaintiff-

Appellant's pregnancy announcement, she was a "top saleswoman." *See* A182. As

a result of the increased waiting time, Plaintiff-Appellant "went from being the top

salesperson to being the one with the least cars out." *See* A167, A173, A181,

A182.

Defendants' argument as to causation is flawed as well because there is a

clear causal connection in the temporal proximity of Plaintiff-Appellant's

pregnancy announcement and her decrease in sales due to the increased wait time.

"Under Title VII and the NYSHRL, a plaintiff need not prove (or plead) that 'the

causal link between injury and wrong is so close that the injury would not have

occurred but for the act.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325-26 (S.D.N.Y. 2020) (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019)). "So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Lenzi, 944 F.3d at 107 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013)). "The necessary inference may be derived from a variety of circumstances, including 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[.]'" *Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 U.S. Dist. LEXIS 235002, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). However, under § 1981, to "prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.- Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020). (*Kirkland-Hudson v Mount Vernon City Sch Dist*, No 21-CV-695 (KMK), 2023 US Dist LEXIS 54339 (SDNY Mar 29, 2023)).

In their Motion for Summary Judgment, Defendants advance the unpersuasive argument that "Guzman took too long to process credit applications *before* [Ms.

Stidhum's] pregnancy." *See* A762. In fact, however, Guzman was trained in and became trained in using DealerTrack for a period of less than a month in August 2018. *See* A181. In her opposition, Plaintiff-Appellant contends that between late December 2018 through the end of Plaintiff-Appellant's employment in January 2019, Guzman made the customers of Leticia Stidhum wait much longer in running and reading the credit that despite having become *faster* in running Dealertrack since taking the helm of finance manager in July or August 2018, Guzman in fact processed Leticia's customer's applications *more slowly*, despite Leticia Stidhum inquiring about the status of the credit applications multiple times. Thus, it was "clear as day" that there are no rational basis for Guzman making her wait longer. *See* A167. When Plaintiff-Appellant brought this issue to Adris Guzman, Andris had no clear response as to the cause of the delay, only telling Plaintiff-Appellant that she had to wait. *See* A213.

Defendants' other argument that "any delays in processing credit applications was not attributable to Defendants but rather, the response times from financial institutions or other third party involved in the verification process" is similarly unavailing. *See* A762. It is unavailing because notwithstanding the variables that go into a car sale, the running of the credit by Mr. Guzman is an integral part of most transactions as most customers require a loan to finance the purchase. *See* A214. The fact is the timing of the taking away of Ms. Stidhum's DealerTrack access and the *increase* in wait time targeted for Ms. Stidhum came *after* Plaintiff-Appellant's

14

pregnancy announcement, resulting in a statistically-significant decrease in cars sold and take-home pay, which is based in part on commissions. *See* A165. Specifically, between December 2018 through the end of Plaintiff-Appellant's employment in January 2019, when Guzman "was the only one responsible for running the credit" *See* A181. Guzman intentionally delayed the credit applications of Leticia Stidhum's customers despite Leticia Stidhum inquiring about the status of credit applications multiple time." *See* A183. The temporal proximity between Plaintiff-Appellant's pregnancy announcement in November 2018 and the immediate increase in wait time and decrease in car sales and take-home pay based upon commissions demonstrate the inverse relationship between wait time and cars sold.

## II.     The Lower Court Failed to Account for the Defendants' Spoilation/ Loss of the Relevant Sales Log in its Decision

It is widely accepted in the Second Circuit that parties should not benefit from spoliation, and the district court may impose sanctions, such as an adverse inference instruction at trial under Rule 37(b) or pursuant to "its inherent power to manage its own affairs" when a party destroys evidence. *See Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002); *see also Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

The Court erred in failing to take into account that the relevant documents concerning Plaintiff-Appellant's sale as compared to her coworkers were lost through the negligence or culpable conduct of the Defendants. Here, the Objection to the Magistrate Judge's Report and Recommendation concerning Plaintiff-Appellant's Motion to Compel Defendants to "produce documents pertaining to other salespersons [besides Plaintiff-Appellant]" was fully briefed and pending at the time of the ruling on the Motion for Summary Judgment. *See* A141-154, A711-A729, A730-A739. The sales logs of Plaintiff-Appellant and Plaintiff-Appellant's comparator salesmen that the 30(b)(6) witness of Corporate Defendants, Deanna Jennings, has testified "were created in the ordinary course of business and maintained in Defendants' place of business" was never produced. Ms. Jennings believe that sales "logs might have been moved due to construction at Hillside Auto Mall, but had been unable to find the logs." *See* A24-A26. The three successive declarations of Deanna Jennings states that "conduct a search for Hillside Auto Outlet's sales logs which she was responsible to maintain in her role as controller; but was unable to find them either at Hillside Auto Outlet, Hillside Auto Mall, or a third-party storage facility they used" *See* A14-A16, A24-A26, A704-A707. Defendants produced a photo of one picture of a box containing records for 2018. *See* A130 but failed to produce any relevant records despite the Defendants having been on notice of the pendency of the lawsuit as early as December 30, 2019. *See*

*Stidhum v. 161-10 Hillside Auto Ave, LLC*, No. 19-cv-05458 (ENV) (JO) ("*Stidhum I*").

That the logs are relevant was already recognized by Judges Mann and Bloom when they originally ordered its production in December 2022 and April 2023. A111. "Relevance may be assumed where the breaching party acted in bad faith or with gross negligence." *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. CV 13-5475 (JS) (AKT), 2015 U.S. Dist. LEXIS 113071, at *27 (E.D.N.Y. Aug. 25, 2015) (citations omitted). "However, where the spoliating party has acted only negligently, the moving party must make a showing that the lost materials were relevant." Id., at *27–28 (citations omitted). "A party may establish relevance by adducing sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." Id., at *28 (citations omitted). However, "[c]ourts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from its destruction." Id. (citations omitted). "As such, it is not incumbent upon the plaintiff to show that specific documents were lost.… rather it would be enough for plaintiff to

17

demonstrate that certain types of relevant documents existed and that they were necessarily destroyed." Id. (citations omitted).

The Defendants are unable to cure the prejudice through other discovery. Disclosure of sales records from outside the period of Plaintiff-Appellant's employment is no substitute for disclosure of her sales records, or other sales records from her period of employment which can act as comparators for disparate treatment.

The District Court erred by failing to account at all for the absolute loss of Defendants' weekly commission sheets identifying Plaintiff-Appellant and her comparators in car sales between November 2018 and January 2019 in its decision in determining that Plaintiff-Appellant has not shown that she has suffered an adverse inference action. *See* A61-A64.

More specifically, the evidence which Plaintiff-Appellant allege has been spoliated on the basis that notwithstanding Defendants' practice to keep, store and maintain records. Defendants noticeably failed to produce the sales records for the relevant period of time which would establish the actual cars sold by Plaintiff-Appellant versus her comparators (and the actual wage rate of Plaintiff-Appellant versus her comparators). In other words, the evidence which was not produced would have shown that while Plaintiff-Appellant's pay *went down* as a result of the *increased wait time*, her comparator's pay *went up*.

18

The evidence submitted is clear that there still is an issue of material fact regarding Plaintiff-Appellant's discrimination for Defendants' evidence submitted is inconclusive and Plaintiff-Appellant can sufficiently meet the four parts it takes to prove discrimination. Thus, in the light most favorable to the Plaintiff-Appellant, should be considered to be beneficial to the Plaintiff-Appellant. Said evidence—if it hadn't been "lost" or "destroyed"—would have corroborated Plaintiff-Appellant's account, which is that business *did not* slow during the subsequent weeks following the implementation of the delayed by Guzman. That is because, relative to her and in fact relative to their own performance, her colleague in fact earned *more commission* while she earned *less*.

## III. The Lower Count Erred in Tethering the Start Date of the Calculation of Wage Loss Associated with the Longer Wait Time to Pregnancy Announcement Rather Than when the Longer Wait Time was Implemented

Courts in this Circuit have held that a demotion evidenced by a decrease in "wage or salary" or resulting in a less distinguished title constitutes an adverse employment action. *See, e.g., Sanders v. N.Y.C. Human Res. Admin*., 361F. 3d 749, 755 (2d Cir. 2004). On the other hand, another court in this Circuit has held, "an indirect and minor effect on commission income … is not sufficient to transform a[change in job responsibilities] into a demotion.'" *Szwalla v. Time Warner Cable,*

*LLC,* 135 F.Supp. 3d 34, 51 (N.D.N.Y. 2015) (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)),aff'd, 670 F. App'x 738 (2d Cir. 2016). A reduction in commission earnings is unlikely to constitute an adverse employment action on the basis of discrimination because commission earnings are proportional to sales. *See Bristol-Myers Squibb Co.*, 85 F.3dat274

The District Court erred in finding that "Plaintiff's salary largely stayed the same and her commission throughout her tenure at Hillside Auto Outlet follow no discernable trend line or pattern connected to the date Plaintiff-Appellant announced her pregnancy." SA20.

In agreeing with the Defendants, the Court ignores Plaintiff-Appellant's arguments as to the lag time between her pregnancy announcement (in November 2018) and the implementation of the discriminatory policy of retracting Plaintiff-Appellant's DealerTrack access and targeting her customer's in wait time, which is from late December 2018 onwards through the end of Plaintiff-Appellant's employment in January 2019, when Guzman "was the only one responsible for running the credit" *See* A181. The Court notes that "Plaintiff does not use her pregnancy announcement as the point of comparison," but rather "she compares her pay for the period from September 4, 2018 to December 17, 2018, with her pay for the period from December 18, 2018 to January 14, 2019." *See* SA8. In so finding, the Court ignores that after Plaintiff-Appellant's pregnancy announcement in

November 2018, there was a brief lag in the implementation of the increased lag time, when Guzman began to intentionally delayed the credit applications of Leticia Stidhum's customers despite Leticia Stidhum inquiring about the status of credit applications multiple time." *See* A183. It was in late December 2018, when Ishaque Thanwalla went to Pakistan, that Plaintiff-Appellant lost her DealerTrack access and Guzman's intentional delay of the credit applications of Plaintiff-Appellant's customers despite Plaintiff-Appellant asking Guzman multiple times about the status of the credit applications is keyed to the period of time *after* her pregnancy announcement in late November 2018 *and* Ishaque Thanwalla's trip to Pakistan in late December 2018. *See* A181-A182. In calculating the effect of the *increased* wait time, the Court improperly included time between the pregnancy announcement and the implementation of the increased wait time, when at the time of the pregnancy announcement, Plaintiff-Appellant was a top salesperson at the store. In other words, the quantification of the difference in pay due to the *increased* wait time is keyed to the date when the *increased* wait time is *implemented*, and such implementation took place one month after the pregnancy announcement.

The Court's analysis also does not mention or exclude the two outliers in Defendants' calculation. Specifically, Defendant's computation of average commission for the 26 weeks before she announced her pregnancy was $710.00 per week and for the eight (8) weeks after she announced her pregnancy was $690.63

per week is flawed because Defendants incorrectly put the base pay for the last week as $300, rather than $200.00 base pay for Week 34 and further improperly included a $0 pay per week for Week 12, rather than excluding it as an outlier, thus *decreasing* the *pre-discrimination* wage rate. Defendants also improperly includes as part of the determination of the *post-discrimination* wage rate the bonus that Plaintiff-Appellant received as the top salesperson and made the most sales in the store in November 2018 directly preceding the pregnancy announcement, and was accorded a $1000 bonus a result. *See* A167, A173-A174, A182.

In contrast, Plaintiff-Appellant's calculation shows that the average total pay from September 4, 2018 to December 17, 2018 is $1,145.00, while the average commission is $845. In contrast, the average total pay from December 18, 2018 to January 14, 2019 as $781.25 and the average commission is $506.25. The difference in total pay is $363.75 per week, representing a 31.8% decrease in total pay, while the difference in commission is $338.75, representing a 40% decrease in commission. *See* A181-A182, A170-A173, A504 (showing a salary of $200, not $300); A441-A504 (paystubs during Plaintiff-Appellant's employment), A61-A64.

The adverse employment action—in the form of increased waiting time—directly correlates and *caused* a decrease in sales and a corresponding *decrease in pay*. That is because Plaintiff-Appellant's compensation structure at Hillside Auto

22

Outlet consisted of a $300.00 weekly salary, $150.00 flat commission for each car sold (even if it was sold at a loss)." *See* A159.

## IV.    There is a Genuine Dispute of Material Fact as to Whether there was Constructive Discharge

Second Circuit precedent recognizes that "loss of pay or change in title," may amount to constructive discharge, and that the question of discharge versus resignation cannot be resolved simply by concluding that the reduced amount compares favorably to the earnings of other accomplished persons in the national workforce. *See Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983). The percentage of a reduction and the reasonable expectations of the parties are also relevant to the factual determination whether an employee was forced into an involuntary resignation. *See Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 161 (2d Cir. 1998) (upholding jury finding of constructive discharge where plaintiff's $60,000 salary was reduced to $26,000); *see also Morris v. New York City Dep't of Sanitation*, 2003 U.S. Dist. LEXIS 5146, 2003 WL 1739009, at *5 (S.D.N.Y. Apr. 2, 2003) (identifying *prima facie* case of constructive discharge where plaintiff earning approximately $89,000 was told that salary would be reduced by $25,000 if he did not retire); *Fogarty v. Near N. Ins. Brokerage Co., Inc.,* 1997 U.S. Dist. LEXIS 20677, 1997 WL 799112, at *2 (S.D.N.Y. Dec. 30, 1997) (upholding jury

verdict of constructive discharge where plaintiff lost bonus payments comprising half of expected salary).

Plaintiff-Appellant resigned from Hillside Auto Outlet in January 2019. A174. Plaintiff-Appellant cites the following reasons for her resignation:(1) the longer wait times her customers were subjected to by Guzman, (2) the decrease in her income due to the longer wait times, and (3) Thanwalla's refusal to give Plaintiff-Appellant a promotion he allegedly promised her before he left for vacation. A174-A175. Plaintiff-Appellant asserts that she left Hillside Auto Outlet because she was not making money, and was "blatantly ignored by Guzman when[she]had a customer" who needed credit. *See* A174-A175. A251. Additionally, Plaintiff-Appellant asserts that Thanwalla promised her a promotion but when he returned from vacation and she asked to meet with him, he "told her he w[ould]discuss[it]with her later." A174-A175. Plaintiff-Appellant stated that following Thanwalla's discuss it later comment, she felt "it was clear as day" that Thanwalla would not give her the promotion. A175.

A factfinder can look at the loss of pay in tandem with the conduct of the Defendants to determine whether there was a constructive discharge. Turning to one of the reasons Plaintiff-Appellant left her employment, that she was "not making any money," A174, the evidence viewed in the light most favorable to Plaintiff-Appellant shows that her average total pay from September 4, 2018 to December 17,

2018 is $1,145.00, while the average commission is $845. In contrast, the average total pay from December 18, 2018 to January 14, 2019 as $781.25 and the average commission is $506.25. The difference in total pay is $363.75 per week, representing a 31.8% decrease in total pay, while the difference in commission is $338.75, representing a 40% decrease in commission. *See* A181-A182, A170-A173, A504 (showing a salary of $200, not $300); A441-A504 (paystubs during Plaintiff-Appellant's employment), A61-A64. A factfinder could conclude that this decrease as a result of the increased waiting time constitutes loss of pay that can constitute constructive discharge.

Turning next to Plaintiff-Appellant's other reasons for leaving, that she was "pregnant, tired," a factfinder could find that the targeting of Ms. Stidhum through the loss of her DealerTrack access in tandem with the targeted increase of her wait time relative to the other car salesman, in light of the loss of the sales log of her car salesmen during the relevant time period, constitutes constructive discharge. *See Scott v. Harris Interactive, Inc.*, 512 F. App'x 25, 28 (2d Cir. 2013) (finding that evidence of repeated statement to the Plaintiff that he could resign could in context support a finding of constructive discharge). Rather than "trivial complaints," Plaintiff can show that Defendants had created "an intolerable work atmosphere that forces an employee to quit voluntarily" and that the working conditions she was put under are "so difficult or unpleasant that a reasonable person in the employee's shoes

would have felt compelled to resign.'" *Trinidad v. New York City Dep't of Correction*, 423 F. Supp. 2d 151, 168 (S.D.N.Y. 2006) (quoting *Chamblee v. Harris & Harris, Inc.,* 154 F. Supp. 2d 670, 675 (S.D.N.Y. 2001)).

The Court erred by considering only the following, that "Plaintiff's employer intentionally reduced her access to DealerTrack" and justified it by crediting Defendants' argument that it was "consistent with the company's policy." *See* SA22. In contrast, in the light most favorable to the Plaintiff-Appellant, a reasonable factfinder could find that the (1) loss of pay associated with the increased wait time, (2) the loss of DealerTrack access, (3) the increased wait time that was targeted to her only constitutes constructive discharge.

As argued at III, *supra*, In finding that Plaintiff-Appellant "*was* making money" SA2, the Court ignores Plaintiff-Appellant's arguments as to the lag time between her pregnancy announcement (in November 2018) and the implementation of the discriminatory policy of retracting Plaintiff-Appellant's DealerTrack access and targeting her customer's in wait time, which is from late December 2018 onwards through the end of Plaintiff-Appellant's employment in January 2019, when Guzman "was the only one responsible for running the credit" *See* A181. The Court further failed to take into consideration that the Defendants improperly included outliers such as the one week when Plaintiff-Appellant did not work in its computation of the pre-pregnancy announcement differential.

In contrast, in the light most favorable to Plaintiff-Appellant, a reasonable factfinder would apply the start date of the implementation of the discriminatory policy (which necessarily happens *after* the pregnancy announcement for non-visibly pregnant women) rather than the date of the announcement; and would have excluded the outliers from the calculation and would determine that the significant decrease in pay was a direct cause of Plaintiff-Appellant's departure. On top of that, the other reasons for Plaintiff-Appellant's departure—including her customer's own departure, which was commented upon by her coworkers—further supports a finding that the working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *See* SA18; *see also Trinidad*, 423 F. Supp. 2d at 168).

## V. There is a Genuine Dispute of Material Fact as to Whether there was Failure to Promote

The Lower Court's inflexible application of the four-factor failure to promote test is erroneous by requiring a Plaintiff who was already promised a specific promotion (from saleswoman to manager) with a specific anchor date (after Thanwalla's vacation overseas and return to the United States in January 2019) pre-pregnancy announcement and who was denied the promotion subsequent to the announcement demonstrate that "she applied for the position" and "how she was qualified for the position." *See* SA23. The Court's application fails to recognize that

'the facts of a particular case' may sometimes make 'a specific application a quixotic requirement.' *See Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004). The specific application requirement aims to "protect[] employers from the unfair burden of having "to keep track of all employees who have generally expressed an interest in promotion and [to] consider each of them for any opening for which they are qualified but did not specifically apply." *Petrosino*, 385 F.3d at 227.

Here, no such employment interest in being protected from an unfair burden is present. Plaintiff-Appellant received as the top salesperson and made the most sales in the store in November 2018 directly preceding the pregnancy announcement, and was accorded a $1000 bonus a result. *See* A167, A173-A174, A182. In accordance thereof, Plaintiff-Appellant was "was promised that when [Thanwalla] return[ed] that [she] was going to be promoted to sales manager" When Thanwalla came back, his refusal to discuss about the promotion was "clear as day" a denial of the same. *See* A175. Plaintiff-Appellant waited for Ishaque Thanwalla to return from Pakistan, because she "was promised that when he would return that [she] was going to be promoted to sales manager" *See* A216. Plaintiff-Appellant's meeting with Thanwalla after his return was a follow up on an earlier promise. Thanwalla's actions—making Plaintiff-Appellant wait, and then wait some more—made it clear to Plaintiff-Appellant that she would not be promoted. *See* A175.

Here, the Court's requirement that a pregnancy discrimination Plaintiff-Appellant who was promised a promotion prior to the employer's actual notice of pregnancy fails to consider that unlike the defining features of other protected classes under Title VII such as race or national origin, pregnancy is temporary in nature. Thus, contrary to the lower court's conclusion, comparing an employee before (promised a promotion) and after her pregnancy announcement (not given the promotion) may provide strong evidence from which a factfinder could infer discrimination, and therefore it is sufficient to make out a *prima facie* case. *See Hitchcock v. Angel Corps, Inc*., 718 F.3d 733, 742 (7th Cir. 2013) (treating an employee "significantly differently—and in a manner that a reasonable jury could find deviated anomalously from standard practice—after the supervisor learned of her pregnancy" is evidence of an employer's discriminatory animus) (emphasis in origina*l); Martin v. Canon Bus. Solutions, Inc*., No. 11-cv-02565- WJM-KMT, 2013 WL 11132134 (D. Colo. Sept. 9, 2013) (evidence that Plaintiff-Appellant received multiple awards as salesperson before announcing pregnancy, but began receiving negative reviews days afterward, is evidence of pretext). Here, the inflexible specific application requirement is clearly inapposite and the requirement of qualification is clearly satisfied given that Plaintiff-Appellant was handpicked for the promotion based on her top performance, and was deemed qualified for the promotion.

Thus, the Court erred in finding that there is no material dispute of fact over Plaintiff-Appellant's failure to promote claim.

## CONCLUSION

We respectfully request that the Court reverse the Court's decision as to the Title VII and NYSHRL discrimination claims.

Dated: July 29, 2025

TROY LAW, PLLC
 */s/ John Troy*
John Troy
Troy Law, PLLC
41-25 Kissnea Boulevard, Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Counsel for Plaintiff-Appellant*

30

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 29th day of July 2025, I caused this Brief of Appellant with Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all of the registered CM/ECF users:

I further certify that on this 29th day of July 2025, I caused the required number of bound copies of the Brief of Plaintiff-Appellant with Joint Appendix to be filed with the Clerk of the Court via First Class Mail.

*/s/John Troy*
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ]  this brief contains [6470] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [    ]  this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ]  this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2019*] in [*14pt Times New Roman*], *or*

   [ X ]  this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 29, 2025                     */s/ John Troy*
                                          *Counsel for Plaintiff-Appellant*